1  WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leonard Keith Hopson,<br><br>　　　　Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>　　　　Respondents. | CV 16-03859-PHX-DLR (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DOUGLAS L. RAYES, UNITED STATES DISTRICT COURT:

On June 13, 2017, Petitioner, Leonard Keith Hopson, who is confined in the Arizona State Prison, Huachuca Unit, Kingman, Arizona, filed a *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (hereinafter "amended habeas petition")[1]. (Doc. 13). On November 6, 2017, Respondents filed a Limited Answer (Doc. 21), and on May 1, 2018, Petitioner filed a Reply (Doc. 32).

///
///
///
///

---

[1] The Clerk of Court filing date is June 16, 2017, but pursuant to the prison mailbox rule, the date of filing is June 13, 2017, the date Petitioner certified it was placed in the prison mailing system (Doc. 13 at 16). See 28 U.S.C. § 2254 Rule 3(d).

# STATE COURT PROCEEDINGS

Petitioner was indicted in September, 2011 on two counts of aggravated assault, eight counts of sexual conduct with a minor, and four counts of molestation of a child. (Exh. B[2].) The facts, as reported in the Presentence Report, were as follows:

> On August 25, 2009, Robin [H] called police to inquire about the statute of limitation for rape on behalf of her daughter [RH]. Robin said she always thought [Petitioner] raped [RH] when [RH] was about thirteen-years-old [sic]. Robin also stated [RH] had three children with [Petitioner] and until two months ago they lived together. Robin advised they were having child custody issues.
>
> Police contacted [RH] who reported that at age eleven she engaged in a relationship with [Petitioner] who was twenty-three years old when they met. On several occasions [RH] would wake up in the middle of the night with her underwear pulled down and [Petitioner] trying to put his penis into her anus. He also put his fingers into her vulva while she was sleeping. These incidents occurred from 1990 to 2007.
>
> [RH] was first impregnated by [Petitioner] at age sixteen and she suffered a miscarriage. She again got pregnant at age seventeen by [Petitioner]. She had her son at age eighteen. [RH] ended up pregnant two more times, both of which resulted in births, by [Petitioner]. At age twenty-seven she moved to Colorado to get away from [Petitioner], but he followed her and they eventually moved in together. She finally ended the relationship after he engaged in sexual intercourse with her numerous times without her permission. [RH] was on medication that made her enter a deep sleep and at least once a week she would wake up to find [Petitioner] having anal sex with her.
>
> [RH] stated that she learned a couple weeks prior that [Petitioner] molester her younger sister, [KH], when she was about nine or ten-years-old [sic]. [RH] stated [Petitioner] also molested her older sister and brother, but they wanted to forget about it and not prosecute.
>
> Police contacted her older sister and brother, and they both denied sexual contact with [Petitioner].
>
> Police contacted [KH] who stated that [Petitioner] began sexually assaulting her when she was about nine years old, and the abuse lasted two or three years. He would stick his fingers in her vagina and would try to lift her shirt off and rub her chest area.
>
> Police contacted [Petitioner] on March 1, 2010. He said he had memory problems, but said he was about twenty years old when he met [RH] and she was about nine or ten years old. He admitted having three children with [RH], with the first one being born when [RH] was eighteen years and two months

---

[2]All exhibits cited are exhibits attached to Respondents' Limited Answer (Doc. 21), unless otherwise noted.

- 2 -

> old. He admitted knowing how old [RH] was when they met, and admitted she got pregnant by him when she was seventeen. He also remembered [RH] having a miscarriage before her first child. He said he thought they were codependent because he was helping to support and buy things for [RH] and her mother, and that is why he thought no one made a big deal about the relationship. When asked if their relationship was consensual, [Petitioner] said it was always consensual and continued to explain that he and [RH] broke[] up three times with the first time being when she was []bout twelve or thirteen years old.

(Exh. F, at 1-2.)

On August 31, 2012, Petitioner pleaded guilty, pursuant to a plea agreement, to three counts of attempted child molestation: Counts 2 and 8 against victim RH, and Count 14 against victim KH. (Exh. D.) Petitioner agreed to a sentence of lifetime probation on Counts 2 and 8, and a sentence of no greater than the presumptive 10-years on Count 14. (Id.) In his plea agreement, Petitioner agreed to "waive[] and give[] up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with [the plea] agreement." (Id.) Petitioner furthermore waived and gave up his right to appeal. (Id.)

On October 4, 2012, Petitioner was sentenced to 10-years imprisonment on Count 14, to be followed by lifetime probation on Counts 2 and 8. (Exh. J.) Petitioner was given credit for 276 days of presentence incarceration. (Id.) Petitioner was provided with and signed his notice of rights of appeal and post-conviction relief, which included the deadlines for filing. (Exh. I.)

On May 7, 2013, the Maricopa County Clerk of Court received for filing three documents from Petitioner: a Notice of Post-Conviction Relief (Exh. K), a letter to the court (Exh. L), and a Request for Preparation of Post-Conviction Record (Exh. M). Only the letter to the court indicates when it was mailed - on May 6, 2013. In the other two documents, Petitioner dated his signature November 1, 2012, but does not specify when the documents were mailed. In fact, in Petitioner's Request for Preparation of Post-Conviction Relief Record, the mailing date was left blank. (Exh. M at 2.) The court docket does not reflect any filings by Petitioner after his sentencing until these filings on May 7, 2013. (Exh. A at 4.)

On June 7, 2013, the trial court denied relief, for the reason that Petitioner's Rule 32 proceedings were "initiated in an untimely manner." (Exh. N.) The court determined that Petitioner's notice of post-conviction relief was due to be filed with the court by January 4, 2013, and thus his May 7, 2013, filings were untimely under state law. The court also found that Petitioner failed to state a claim for relief which could be granted in an untimely Rule 32 proceeding, as Petitioner's "[N]otice does not state any claims for relief nor does it contain any facts, memoranda, or law." (Id.) Petitioner did not seek appellate review of that decision within the thirty day time limit provided by Rule 32.9(c), Ariz. R.Crim. P. (Exh. A at 4.) Instead, Petitioner chose to file numerous documents in the trial court over the next three years that were considered by the court, but summarily addressed or denied. (Id. at 4 at 1-4; Exhs. O-Z, AA-CC, EE-HH, FF, QQ, RR, SS, VV, ZZ.) Several of Petitioner's filings were construed as successive PCR proceedings, and deemed untimely by the trial court. (Exhs. O, P, Q, BB.) Petitioner was successful on two unopposed motions that he filed on May 4, 2016, relating to the percentage surcharge applied to fines assessed, and to the amount of credit he received for presentence incarceration time. (Exhs. DD, II) On August 14, 2016, the trial court awarded Petitioner an additional 62 days of presentence incarceration credit, and reduced the surcharges on the fines assessed on each count. (Exh. NN.)

Although the state court dismissed Petitioner's initial PCR notice as untimely, Petitioner nonetheless filed several pleadings in the Arizona Court of Appeals. Petitioner filed a Special Action in July, 2015, posing several questions of law to the Court. (Exh. BBB.) The Court declined to accept jurisdiction. (Exh. CCC.) In July, 2016, Petitioner filed a "notice of Petition for Review" in the Court of Appeals, (Exh. EEE), followed by a "Petition for Review," in August, 2016, (Exh. FFF). On September 19, 2017, the appellate court denied review in a written Memorandum Decision, first addressing the procedural history of Petitioner's case:

> Hopson was charged with two counts of aggravated assault, four counts of child molestation, and eight counts of sexual conduct with a minor. He pled guilty to three counts of attempted child molestation. In accordance with the

stipulated terms in the plea agreement, the superior court sentenced Hopson to a prison term of ten years, followed by two concurrent terms of lifetime probation. Although advised of his right to review, Hopson did not timely file a PCR of-right, and his case became final on January 2, 2013. [].

In May 2013, Hopson filed an untimely notice of PCR. The superior court summarily dismissed, finding that Hopson's notice

> [D]oes not state any claims for relief nor does it contain any facts, memoranda, or law. . . . [W]hen the notice is filed in an untimely fashion, the defendant has the burden of alleging specific claims and supporting those claims with sufficient facts, arguments, and law. See Ariz. R. Crim. P. 32.2(b) and Ariz. R. Crim. P. 32.4(a).

Hopson did not seek review of this order.

Over the next three years, Hopson filed four additional PCR proceedings. Not all pleadings were captioned "Notice of Post-Conviction Relief," but in each instance Hopson was attacking the validity of his conviction or sentence, and the superior court properly treated the pleadings as PCRs. *See* Rule 32.3 (directing the court to treat such pleadings as "a petition for relief under this rule and the procedures of this rule shall govern."). In each proceeding, the superior court dismissed the proceeding in an order that identified and ruled upon the issues raised in a thorough, well-reasoned manner.

In July 2016, Hopson filed a petition for review in which he requested review of the following superior court orders: (1) March 7, 2016 (denying motion to compel); (2) April 22, 2016 (dismissing 5th PCR); (3)May 5, 2016 (denying motion to correct/clarify); (4) May 20, 2016 (denying motion for change of judge); (5) May 24, 2016 (denying motion to transfer file); (6) June 2, 2016 (denying motion for rehearing motion for change of judge). The petition did not comply with Rule32.9(c), and on July 19, 2016, we advised Hopson by letter of the deficiencies, and allowed Hopson thirty days to file a proper petition for review.

In August 2016, Hopson filed this current petition for review. In the petition, Hopson lists thirty "grounds" or questions for review, and then improperly incorporates by reference the pleadings and exhibits he filed in superior court "to explain in detail all grounds and questions to this court." It is not enough to incorporate by reference any issue or argument. A petitioner must set forth each claim with record references and argument. *See* Rule 32.9(c)(1); *State v. Bortz*, 169 Ariz. 575, 577 (App. 1991). Simply incorporating an earlier pleading by reference is inappropriate. *State v. Moore*, 125 Ariz. 528, 529 (App. 1980). Thus, Hopson has failed to present any issue for review.

(Exh. GGG.)

On December 22, 2016, Petitioner also filed a "Petition for Review of Minute Entry 11/01/2016" in the Arizona Court of Appeals, in which he requested that the Court review four motions he had filed in the trial court, and three minute entry rulings by the trial court.

- 5 -

(Exh. III.) On December 29, 2016, the Court summarily dismissed the petition as untimely. (Exh. JJJ.)

In the Supreme Court of Arizona, Petitioner filed a "Petition for Review of Minute Entry on January 23, 2017," seeking review of the same trial court rulings. (Exh. LLL.) The Court summarily denied review on September 17, 2017. (Exh. MMM.) Petitioner filed other miscellaneous motions in the Arizona Supreme Court: Motions for Constitutional Compliance, filed on November 25, 2015 and July 11, 2016 (Exhs. OOO, UUU); and, Petitions for Review filed on January 8, 2016 and September 29, 2016 (Exhs. NNN, VVV). These motions were all summarily denied. (Exhs. OOO, WWW, XXX.)

## HABEAS PROCEEDINGS

On November 7, 2016, Petitioner filed his initial habeas petition. (Doc. 1.) The Court screened the petition and granted Petitioner the opportunity to correct its deficiencies by paying the filing free and amending the petition, making Petitioner's June 13, 2017 amended habeas petition the operative filing[3]. In his petition, Petitioner raises eight grounds for relief:

(1) Petitioner's Fifth, Fourth, Sixth, and Fourteenth Amendment rights were violated because he was prosecuted after the expiration of the statute of limitations;

(2) Petitioner's sentence of lifetime probation violates his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights;

(3) The detective and prosecutor committed perjury at the grand jury proceedings, in violation of the Sixth and Fourteenth Amendments;

(4) The indictment was invalid, in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments;

(5) Petitioner received ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments;

---

[3]Since Petitioner's amended habeas petition raises claims identical to his original petition, his amended petition "relates back" to his original petition for purposes of calculating statute of limitations period. See 28 U.S.C. § 2242; Fed. R. Civ. P. 15(c).

(6) Petitioner's accuser filed a false criminal report, in violation of the Sixth and Fourteenth Amendments;

(7) The judge and prosecutor engaged in misconduct, in violation of the Fifth, Sixth, and Fourteenth Amendments; and

(8) Evidence was lost and the State breached the plea bargain contract, in violation of the Fifth, Sixth, and Fourteenth Amendments.

(Docs. 1, 13.)

Respondents assert that "all of Petitioner's claims are procedurally defaulted without excuse, and that his petition should be denied and dismissed on that basis, and that alternatively, the petition should be denied and dismissed because all of his claims are untimely, waived, or both." (Doc. 21.)

**DISCUSSION**

**A.     Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim

under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

Additionally, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[4] and "adequate"[5] – review of the merits of the claim by a federal habeas court is ordinarily barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred

---

[4] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[5] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris, 489 U.S. at 263 n.9).

Specifically, in Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona courts have consistently applied Arizona's procedural rules to bar further review of claims that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See, e.g., Stewart, 536 U.S. 856, 860 (2002) (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from

following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). The petitioner must also show actual prejudice, not just the possibility of prejudice. U.S. v. Braswell, 501 F.3d 1147, 1150 (9th Cir. 2007).

Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. See Rhines v. Weber, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

Petitioner's claims are all procedurally defaulted. The deadline for filing his PCR notice was ninety days from his sentencing on October 4, 2012: that is, January 2, 2013. See Ariz. R. Crim. P. 32.4(a)[6]. Petitioner signed a Notice of Rights of Review after his sentencing that apprised him of the 90-day deadline. (Exh. GG.) Nonetheless Petitioner did not file his PCR until May, 2013, and the trial court properly dismissed the filing as untimely. Furthermore, Petitioner did not assert any claims for relief in his May, 2013, filing. And, Petitioner did not seek appellate review of the trial court's dismissal order within the 30-day deadline to file a petition for review in the Arizona Court of Appeals. See, Ariz. R. Crim.

---

[6]Petitioner claims in his Reply that the rules in effect at the time of the commission of the offense should apply, and that in 1988 and 1992 there was no deadline in effect for the filing of a petition for post-conviction relief. (Doc. 32 at 2.) Petitioner provides no authority for the application of the earlier procedural rules to his sentencing in 2012. Generally, procedural rule changes not affecting the substantive rights of the parties no not constitute ex post facto violations. Beazell v. Ohio, 269 U.S. 167, 171 (1925).

1  P. 32.9(c). Petitioner failed to fairly present his habeas claims in the state court, and failed
2  to pursue relief in a procedurally appropriate manner.

3  Although Petitioner tried several times in the ensuing years to re-initiate PCR
4  proceedings, all of the proceedings were dismissed by the trial court. Petitioner's failed
5  attempts and the trial court's rulings were recounted by the Arizona Court of Appeals in its
6  decision on Petitioner's petition for review on September 19, 2017. (Exh. GGG.) The
7  Arizona Court of Appeals noted that Petitioner's PCR petition was determined to be untimely
8  by the trial court in 2013, and concluded that Petitioner had "failed to present any issue for
9  review." (Id.)

10  Petitioner's claims are barred from habeas review because the state court "would now
11  find the claims procedurally barred," under the state's procedural rules. Franklin, 290 F.3d
12  at 1230-31; see Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal
13  or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for review
14  must be filed within thirty days of trial court's decision). Procedurally defaulted claims may
15  only be considered by a federal court if a Petitioner demonstrates that a miscarriage of justice
16  would result, or establish cause for his noncompliance and actual prejudice. See Schlup v.
17  Delo, 513 U.S. at 321.

18  Petitioner asserts in his Reply that he is actually innocent, because he was prosecuted
19  outside of the statute of limitations, and because there was "perjury before the grand jury."
20  (Doc. 32 at 2-10.) In order to present otherwise time-barred claims, a petitioner must
21  establish that his case "falls within a narrow class of cases . . . implicating a fundamental
22  miscarriage of justice." Schlup, 513 U.S. at 314-315. The Supreme Court has "explicitly tied
23  the miscarriage of justice exception *to the petitioner's innocence*" and stressed that habeas
24  corpus petitions advancing a credible claim of actual innocence are "extremely rare." Id. at
25  321 (emphasis added). Actual innocence, if proved, serves as a gateway through which a
26  petitioner may pass whether the impediment is a procedural bar or expiration of the AEDPA
27  statute of limitations. McQuiggin v. Perkins, 133 S. Ct. 1924, 1925 (2013).

28

"A petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327. Schlup requires a petitioner to "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." Lee v. Lampert 653 F.3d 929, 938 (9th Cir. 2011). However, "without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Schlup, 513 U.S. at 316.

Here, Petitioner expressly conceded his guilt on three separate charges of attempted child molestation against two separate victims. Despite his guilty pleas, in his Reply Petitioner asserts that his innocence is established by the inconsistent statements of witnesses and what Petitioner characterizes as "false testimony" during grand jury proceedings. "[T]he miscarriage of justice exception is limited to those extraordinary cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt." Johnson v. Knowles, 541 F.3d 933, 937 (9th Cir. 2008). Petitioner does not present any evidence sufficient to undermine the court's confidence in the finding of guilt.

Petitioner also asserts that his guilty pleas were unfairly influenced by the settlement judge,[7] who Petitioner claims advised him that he was facing "considerable time in prison" if he rejected the plea agreement offer, and that the plea agreement offered was "not unfair." (Doc. 32 at 14.) Petitioner was charged with 14 felony counts of sexual conduct with a minor and child molestation. His plea agreement involved dismissal of thirteen counts and a cap of 10-years in prison. Under the circumstances, the purported comments by the settlement judge would not be improper, and in any event, in his plea agreement, Petitioner acknowledged the voluntariness of his guilty pleas. Also, Petitioner did not raise a claim of

---

[7] The settlement judge was a commissioner of the court and not the presiding, sentencing judge. (Exhs. C, J.)

actual innocence in his first PCR filing, or in the July and August, 2016 petitions for review he filed in the Arizona Court of Appeals. Petitioner fails to establish a miscarriage of justice to excuse his procedural default.

Petitioner also fails to establish cause for not complying with the state procedural rules. He asserts that he had requested that his trial attorney file a PCR notice. (Doc. 32 at 16.) Petitioner provides no documents in support of this assertion, and nonetheless does not demonstrate how this interfered with his ability to file a timely notice. Any claim that he was hampered somehow by his attorney's failure is belied by the fact that Petitioner did file a PCR Notice, and filed numerous other pleadings in the trial and appellate courts over the course of several years. Petitioner fails to demonstrate some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claims.

As Petitioner amended habeas petition raises claims that are procedurally defaulted, and as Petitioner does not demonstrate cause and prejudice, or a miscarriage of justice, this Court will recommend that his amended habeas petition be denied and dismissed with prejudice.

**B.  Statute of Limitations under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).**

The AEDPA provides a 1-year statute of limitations period on the filing of an application for a writ of habeas corpus in federal court. 28 U.S.C. § 2244(d)(1). The 1-year period runs from the latest of the following dates:

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

As Petitioner does not allege that the (B) - (D) provisions apply in his case, the statute of limitations in his case ran from the date his judgment became final by the expiration of the time for seeking review. Petitioner was sentenced on October 4, 2012, making the deadline for him to seek review in PCR proceedings January 2, 2013. Thus, Petitioner had until January 2, 2014, to file his habeas petition. He did not file his initial habeas petition until November 7, 2016. The AEDPA statute of limitations may be tolled however, by a "properly filed application for State post-conviction or other collateral review," while the petition is pending in the state courts. 28 U.S.C. § 2244(d)(2). Here, as explained above, none of Petitioner's post-conviction filings were deemed properly filed, and thus did not toll the statute of limitations. See, Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2).") (internal quotation marks and brackets omitted.).

Although the trial court granted motions by Petitioner relating to his presentence incarceration credit and fine surcharges, by ordering that the "original sentence minute entry dated 10/09/2012 [be amended] to reflect 338 days of credit as to Count 14, not 276 days as listed on the minute entry," and by ordering that the plea agreement, filed on 10/04/2012, be amended to set forth the correct fine surcharges, these changes do not appear to have had the effect of amending the judgment. (Exh. NN.) If those modifications were truly a new "judgment," then arguably the statute of limitations clock reset on August 14, 2016, and Petitioner's habeas petition was timely filed, even though none of the claims asserted by Petitioner in his habeas petition relate to the rewarding of presentence credit or the reduction of surcharges (both changes beneficial to Petitioner).

Respondents alert this Court to a Circuit split on the issue of whether or not any amendment to a sentence or judgment has the effect of restarting the statute of limitations under the AEDPA: "the Tenth Circuit has concluded that resentencing only resets the statute

of limitations for claims that directly challenge the resentencing itself–it does not resurrect unrelated claims that would otherwise be untimely." (Doc. 21 at 22.) Respondents note that, on the contrary, the Eleventh Circuit had decided that "a corrected sentence resets the limitations period for all claims, . . . even if the petitioner does not challenge the corrected sentence and instead only asserts claims challenging his conviction." (Id.)

Respondents assert that it is "unclear" what position the Ninth Circuit will take. In Mardesich v. Cate, the Ninth Circuit, recognizing that some claims in a habeas petition may be timely filed and others not, held that the court may dismiss the untimely claim and address the timely one, as the AEDPA's statute of limitations "applies to each claim in a habeas application on an individual basis." 668 F.3d 1164, 1171 (9th Cir. 2012). The Court noted that it was persuaded by the reasoning set forth in Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004): "[s]tretched to its logical extreme, *Walker*[8]*'s* application-based approach would hold the AEDPA's statute of limitations never completely runs on *any* claim so long as there is a possibility of a timely challenge for *one* claim." Mardesich, id. (emphasis in original). Arguably then, a prisoner may file a claim presented by the amendment of a judgment, but claims relating to the original judgment are barred by the statute of limitations.

Nonetheless, the Ninth Circuit, in Smith v. Williams, held that an amended judgment restarts the AEDPA statute of limitations on all potential claims. 871 F.3d 684, 688 (9th Cir. 2017). In that case, Smith's conviction occurred in 1997, but the state court overturned and vacated Smith's convictions and sentences in 2007. Id. at 685. The state supreme court reversed the state court in 2009, remanded to the state court, and in 2012 the state court entered a second amended judgment reinstating Smith's convictions and sentence. Id. The issue before the Ninth Circuit was whether the second amended judgment restarted the statute of limitations. Although the Court held that it did, it emphasized that the statute's focus must be on "the judgment pursuant to which the petitioner is being held." Id. at 687.

---

[8]Walker v. Crosby, 341 F.3d 1240 (11th Cir. 2003).

> The section of AEDPA establishing the statute of limitations for prisoners convicted of a violation of state law uses identical statutory language to indicate that the relevant judgment is the one pursuant to which the petitioner is incarcerated.

Id.

Although the Court in <u>Smith</u> did not further define "the judgment pursuant to which the petitioner is being held," at least one panel of the Ninth Circuit has indicated that a California state court's award of additional presentence incarceration credit constitutes a new judgment for purposes of the AEDPA's statute of limitations and rule on successive habeas petitions. <u>See</u>, <u>Scott v. Asuncion</u>, 737 Fed.Appx. 348 (2018) (unpublished). The Court quoted from <u>Gonzalez v. Sherman</u>, in that "it does not matter whether the error in the judgment was minor or major, ... [w]hat matters is whether there is an amended judgment." 873 F.3d 763, 773 n. 5 (9th Cir. 2017). In a concurring opinion, Judge Christen noted that this interpretation "leads to paradoxical results." <u>Scott</u>, 737 Fed.Appx at 349. Judge Christen addressed the facts of the case to illustrate his point:

> Petitioner Walter Scott was convicted of 33 felony counts – including two counts of first degree murder – and sentenced to state prison for life without the possibility of parole, along with other terms. Scott's 1997 habeas petition was summarily denied. In 1998, Scott filed his first federal habeas petition, which was dismissed with prejudice as time-barred. Then in 2014, the California Court of Appeals determined that Scott was entitled to an additional 108 days of custody credits for time served and directed the trial court to forward to the Department of Corrections an amended abstract of judgment reflecting the correct amount of presentence credits. Scott filed a new federal habeas petition in 2015 reasserting the same seven claims. Opposing this new petition, the State rightly argues that in light of Scott's life-without-parole sentence, the amendment to his presentence credits "realistically will never have any impact whatsoever." Regardless, because the amendment yielded a new state judgment, under *Magwood* Scott is able to file a second federal habeas petition in district court – identical in substance to his first, time-barred federal petition.

Id. at 349-50.

Judge Christen noted that "[w]hether a correction to a state judgment amounts to a 'new judgment' is a question for the state, not a federal court," and that, as California law dictates that a subsequent award of presentence incarceration credits constitutes a new judgment, the Court was constrained to reach the decision it did. Under Arizona law however, "[j]udgment means the court's adjudication that the defendant is guilty or not guilty based on the jury's or the court's verdict, or the defendant's pleas." Ariz.R.Crim.P. 26.1.

- 16 -

In Petitioner's case, the Court did not enter or order entered a new judgment of conviction. It corrected the "sentence minute entry" to reflect, favorably to Petitioner, additional days of presentence incarceration credit and directed that Petitioner's plea agreement reflect lowered surcharges.

It is unclear that the facts in Petitioner's case are sufficiently distinguishable from Smith to reject its application. As AEDPA's statute of limitations is not jurisdictional, a district court need not address the issue if the case may be more easily decided on other grounds. See Cooper v. Neven, 641 F.3d 322, 328 (9th Cir. 2011). As Petitioner's claims are all procedurally defaulted, this Court will not recommend that Petitioner's amended habeas petition be dismissed as untimely under the AEDPA.

**CONCLUSION**

Having determined that Petitioner's claims in his amended habeas petition are procedurally defaulted without excuse, the Court will recommend that Petitioner's amended habeas petition be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 13) **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections

to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 9th day of November, 2018.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge